1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
MELISSA LOCKE,                *      Civil Action
                              *      No. 16-13233
     Plaintiff,              *
                              *      Section "E"(1)
         v.                   *
                              *      New Orleans, Louisiana
SANTA MARIA COFFEEHOUSE LLC,  *      September 13, 2017
ET AL,                        *
                              *
     Defendants.             *
* * * * * * * * * * * * * * *
```

HEARING,
BEFORE THE HONORABLE JANIS VAN MEERVELD,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:            Venezia & Associates, APLC
                             By:  JOHN A. VENEZIA, ESQ.
                             By:  JULIE E. O'SHESKY, ESQ.
                             757 St. Charles Avenue, Suite 302
                             New Orleans, Louisiana 70130

For Defendant                Law Office of Tamara Kluger
Santa Maria Coffeehouse,       Jacobson, LLC
LLC:                         By:  ROBERT G. HARVEY, SR., ESQ.
                             600 North Carrollton Avenue
                             New Orleans, Louisiana 70119

                             The Douglas Law Firm, LLC
                             By:  DONALD C. DOUGLAS, JR., ESQ.
                             1070 W. Causeway Approach, Ste. B
                             Mandeville, Louisiana 70471

Court Audio Operator:        Rebecca S. Gonzalez

Transcriptionist:            Ann B. Schleismann
                             c/o U.S. District Court
                             (504) 589-7724


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

P R O C E E D I N G S

1

2          (Wednesday, September 13, 2017)

3          THE CLERK:  This case is 16-13233, <u>Melissa Locke v</u>

4  <u>Santa Maria Coffeehouse, et al</u>.

5          MR. HARVEY:  Good morning, Your Honor.

6          THE COURT:  Good morning, welcome back, familiar

7  faces.

8          MR. HARVEY:  Robert Harvey on behalf of the

9  Defendants, Your Honor.

10          MR. DOUGLAS:  Donald Douglas with Mr. Harvey.

11          THE COURT:  Okay.

12          MS. O'SHESKY:  Julie O'Shesky and John Venezia on

13  behalf of Melissa Locke, the Plaintiff and Defendant in

14  counterclaim.

15          THE COURT:  Good morning.

16          Okay, so we have certainly a Motion to Compel filed

17  by Santa Maria Coffeehouse and then also pending but not set

18  for hearing today is a Third Motion to Compel Discovery and I

19  plan to see if y'all are prepared to address that after we

20  finish Mr. Harvey's motion just to see if we can avoid any

21  further briefing on the subject.

22          MS. O'SHESKY:  Your Honor, I think we could probably

23  address that now.

24          THE COURT:  Great.

25          MS. O'SHESKY:  We have spoken with opposing counsel

1  and we expect to have supplemental responses by the end of

2  today?

3          MR. HARVEY:  Yes.  We would have had them Monday as I

4  promised, but Mr. LaRocca is in Minnesota, shamefully.

5          THE COURT:  Watching the fiasco?

6          MR. HARVEY:  Yes, and didn't get back until yesterday

7  evening.  So we called the stores this morning and we got the

8  answer and we will supplement before 5:00 today.

9          THE COURT:  Okay, now with regard to the Third Motion

10  to Compel Discovery -- hang on, they're on timers.

11          MS. O'SHESKY:  The third motion should be moot,

12  Your Honor.

13          THE COURT:  Just moot, okay.

14          MS. O'SHESKY:  It should be once --

15          THE COURT:  Okay.  I didn't know if you wanted me to

16  wait to moot it until you see if you get anything.

17          Mr. Venezia?

18          MR. VENEZIA:  Yeah.  Yeah, if we could just wait to

19  see what the responses are and then they will probably be moot,

20  but we can notify the Court this afternoon after we get the

21  responses.

22          THE COURT:  Okay.

23          MS. O'SHESKY:  Or tomorrow morning.

24          THE COURT:  I was dealing with it prematurely anyway,

25  so I will not rule on that.  You all can let me know if it

4

1    becomes moot once you get satisfied.

2            MS. O'SHESKY:  Thank you, Your Honor.

3            THE COURT:  Okay, great.

4            All right then, Mr. Harvey, let's turn to your Motion

5    to Compel, and I understand there's been some progress on maybe

6    some of these items.  So, if you would let me know what is

7    still an issue we'll take it one by one.

8            MR. HARVEY:  Your Honor, I have an issue with 1, 4,

9    5, and the production -- Request for Production of Documents.

10           THE COURT:  Okay, let's start with one then.

11           MR. HARVEY:  Yes.  Your Honor, --

12           THE COURT:  And this relates to each and every

13   witness you may or will call at trial and you got back a lot of

14   names.

15           MR. HARVEY:  Well, I didn't get back anything, Judge.

16   What happened is I asked him to identify every witness he may

17   or will call at any hearing, the trial in the matter, and so

18   forth.  The initial response was "Plaintiff has not decided

19   what witnesses she intends to call" and then -- "but may call

20   any person listed in the disclosures."

21           When I initially got the disclosure we went to the

22   disclosure and of course Your Honor is aware that on the third

23   attempt with this case they finally said the words that she was

24   discharged because she was on maternity leave.  So I went to

25   the disclosures and of course that's what I'm looking for that

1    is the issue, and I don't have to tell you Rule 26 this is the

2    specific issue that I'm looking for in the case.  Well, I

3    didn't see anything in the initial disclosures, so I filed the

4    discovery responses.  And the two that really are tied together

5    is one and four and so we had the conference and what's

6    important here, Your Honor, is that Interrogatory Number 1 is a

7    discovery -- Interrogatory is a discovery issue.  The Rule 26

8    disclosures I mean he amended them, but that was his duty to

9    amend them under Rule 26(e) I believe it is, and he didn't, he

10   just gave me the same answer.

11            Now, I'm interested in -- I think I'm entitled to

12   know what witnesses he will or may call and the subject matter

13   of their testimony.  So if he's going to refer to his

14   disclosures -- and by the way, Your Honor, what happened also

15   is when he filed his answers pursuant to the Rule 37 conference

16   what he did was he added 30 more witnesses and he expanded on

17   the subject matter of each of those witnesses' testimony two

18   weeks before the deadline.  Well, I had already taken about 16

19   or 17 depositions and I have yet to hear a single person in

20   this case say they had any evidence that she was discharged

21   because she was on maternity leave.

22            So as I understood our conference, he was going to

23   and he agreed to amend, he even says it in his memo, "I agree

24   to amend my discovery responses."  Well, as to Number 1 I got

25   no answer -- I got the same answer in reference now to 53

6

1  disclosures none of which say, not a single one says they're

2  going to testify that she was discharged because she was on

3  maternity leave.  So for that reason, Your Honor, I think I'm

4  entitled to have him properly answer Interrogatory Number 1.

5       And if you remember when I got here, Your Honor, you

6  wanted me to put the -- no matter what my argument, put it in

7  the discovery response, don't refer to the other documents.  I

8  think I'm entitled to the same courtesy.

9       THE COURT:  Well, I think the tables have sort of

10  turned here this time.  It's kind of interesting.  Last time I

11  found your answers more than adequate and this time I find the

12  Plaintiffs very thorough.  I looked at -- I don't have any

13  problem with referring to initial disclosures as an answer as

14  to who are my witnesses as long as those initial disclosures

15  provide the information requested.  Here you have initial

16  disclosures and a second set of initial disclosures with quite

17  descriptive lists of what each witness will testify to.

18       Your interrogatory was not precise enough to elicit

19  an answer as specific as to which witnesses are going to

20  testify that Ms. Locke was discharged because she was on

21  maternity leave.  If you wanted to know exactly that you needed

22  at ask exactly that, but you didn't.

23       MR. HARVEY:  I did --

24       THE COURT:  Your Interrogatory Number 1 is extremely

25  vague "Every witness you may or will call at any hearing or

7

1  trial" and that's what you got.

2      MR. HARVEY:  Well, Judge, I said that was probably my

3  weakest interrogatory but it wasn't given to me as an amended

4  answer.  It was the same answer I got.  If you say I'm going to

5  amend your answer and I get the same answer, then I have to

6  assume that you didn't do what you agreed to.  But I will yield

7  to Your Honor because I did get specific in Interrogatory

8  Number 4.

9      THE COURT:  Okay, then let's go to Number 4.  But I

10  find that the answer provided -- and, you know, I would like to

11  solve problems rather than just rule on what has gone before.

12  If we can figure out here today who the witnesses are that

13  would speak to or be able to speak to whether Ms. Locke was

14  discharged because she was on maternity leave, then that would

15  be a good result from this hearing.  But in terms of whether I

16  would require the Plaintiffs to amend their answer to

17  Interrogatory Number 1 as written, no, I wouldn't.

18      MR. HARVEY:  That's fine, Your Honor, and I thank

19  you.

20      THE COURT:  Okay, so let's look at four.

21      MR. HARVEY:  Your Honor, Interrogatory Number 4 again

22  when we looked at the disclosures and his complaint

23  particularly we asked, "In your complaint as amended you allege

24  the Defendants terminated the Plaintiff's employment because

25  she took maternity leave.  As to this allegation identify all

 1    evidence and witnesses you contend prove this allegation."  So

 2    he's listed now three witnesses, Mr. Jacob Rogenbogen

 3    (phonetic) with specific pages, Melissa Locke, David Varnado,

 4    the termination letter and he says "circumstances surrounding

 5    Ms. Locke's termination support the Defendants terminated her

 6    because she took maternity leave."

 7            Well, starting with the witnesses, Your Honor, under

 8    Rule 26(e) he's supposed to supplement his disclosures but in

 9    this particular case we've taken the deposition of David

10    Varnado, Melissa Locke, and Jacob Rogenbogen and not a single

11    one has said they know why or have any evidence that she was

12    discharged because she was on maternity leave.  And I think

13    it's a -- as I said, Your Honor, I'm facing almost what I think

14    is an ambush at trial because out of those 53 witnesses I

15    haven't been able to take the deposition because they came in

16    so late.  So now I think I'm going to need to know the answer

17    to that question, who are you going to call that's specifically

18    going to testify -- and by the way as to this interrogatory he

19    argues this isn't the only issue in the case.  No, it's not,

20    but it is the only issue for me in the FMLA retaliatory claim

21    that she has filed and that's why it is very important I know

22    that.

23            THE COURT:  I understand why you need it.  Perhaps we

24    could hear from Ms. O'Shesky on this point.

25            MS. O'SHESKY:  Your Honor, we specifically listed the

1    people who will testify that the circumstances lead one to

2    conclude that she was terminated while on maternity leave.  And

3    Mr. Rogenbogen's deposition he said that Mr. Williams said she

4    shouldn't have gotten pregnant, the same thing with David

5    Varnado.  Melissa Locke testified that she was pregnant and

6    terminated while she was on maternity leave.  While no one

7    necessarily said Mr. Williams or Mr. LaRocca said while she was

8    one maternity -- we terminated her because she was on maternity

9    leave.  We can't -- no one said that, but --

10         THE COURT:  So you believe you've presented fully the

11    people who can speak to Defendant's motivation for terminating

12    Ms. Locke?

13         MS. O'SHESKY:  Yes, Your Honor.

14         THE COURT:  There are no others that you plan to

15    present at trial either on this list of 53 people or off the

16    list who --

17         MS. O'SHESKY:  Not that we are aware of.

18         THE COURT:  -- are going to speak to Defendant's

19    motivation?

20         MS. O'SHESKY:  Not that we're aware of, Your Honor.

21         THE COURT:  Okay.

22         MR. HARVEY:  May I ask, Your Honor, that -- I'm very

23    happy with what she just said.  If these are the only three

24    that are going to be able to testify to that issue, Your Honor,

25    then that would exclude everyone else on the initial disclosure

1    list.

2         THE COURT:  That's correct and to the extent somebody

3    at trial tried to go there you would have valid grounds to

4    object to that testimony.  Obviously a ruling on that would be

5    in the hands of the District Judge handling the trial and not

6    me, but you'll have a record that this was discussed, these

7    witnesses were identified, specified, and it's exclusive.

8         MR. HARVEY:  Thank you, Your Honor, that satisfies

9    that portion.

10        As to the evidence, other than they list the

11   April 1st termination letter which I believe Counsel will agree

12   Ms. Locke testified does not give any reasons why she was

13   terminated, only that she was terminated.  The next sentence

14   "The circumstances surrounding Ms. Locke's termination" just is

15   so vague.  Whose circumstances, my circumstances, their

16   circumstances?

17        Your Honor, in this case there was a Motion for

18   Summary Judgment filed by the Defendants.  There was a reply in

19   which in the Rule 56 the uncontested issues of fact Ms. Locke

20   admitted to a number of the issues that we state we fired her

21   for.  And then in Document 108-1 they listed another group,

22   almost seven or eight reasons that we have that are reasons

23   that she was terminated.  So, I think just saying "referring to

24   the circumstances" I need something a little better than that.

25   I need what evidence, because they have already admitted to

1   pretty much most of our reasons for discharging her and this

2   doesn't really answer the question "Identify all evidence."

3          THE COURT:  Well, by evidence are you referring to

4   something tangible?  That's how I would read that as opposed to

5   on what facts do you base your claim that she was terminated.

6          MR. HARVEY:  They could do it in two parts.  They

7   could say these facts and they could say this evidence.  I mean

8   it doesn't -- it says evidence.  I'm looking for direct

9   evidence.  I want to see the direct evidence.

10         THE COURT:  In writing?

11         MR. HARVEY:  In writing.

12         THE COURT:  Okay.  So, Ms. O'Shesky, limiting this

13  interrogatory and request to written evidence relating to proof

14  of motivation do you have anything beyond the letter that you

15  referred to?

16         MS. O'SHESKY:  As far as I'm aware, no.  I mean

17  well --

18         MR. VENEZIA:  Your Honor, the circumstances we're

19  referring to are really two things, the timing, and that's why

20  the April 1st letter because it's when she was in fact on

21  leave, and two the lack of an alternative reason told to her.

22  And that letter does not say "We're firing you because you

23  stole money," or "We're firing you because of something else,"

24  it just says "You're fired."  It doesn't give a reason.

25         There's some documents that Mr. Harvey obtained and

1    attached to the summary judgment which is another circumstance

2    and that is his client, which I've just asked his clients this

3    on the stand, they did not respond to an inquiry from the

4    unemployment people, the Louisiana Workforce Commission as to

5    why she was -- was she fired for any violation of any reason.

6    They give no response.  So, that's a lack of response.

7            THE COURT:  You're going to have a story to tell as

8    to why you think all the chronology, the facts, things add up

9    to pregnancy motivated termination.  But in terms of hard

10   evidence, a document, an email, a text, something, all you have

11   is the letter you've referred to?

12           MR. VENEZIA:  Correct.  And the Louisiana Workforce

13   stuff which is really the impeachment if they deny -- if they

14   claim that they said something.

15           THE COURT:  Okay.

16           MR. DOUGLAS:  Your Honor --

17           MR. HARVEY:  Judge, this is not a -- with all due

18   respect you just said "pregnancy."  Most of Mr. Rogenbogen's

19   and even David Varnado's testimony relates to pregnancy.  This

20   is not a pregnancy discrimination claim.  In fact in reading a

21   number of opinions out of this courthouse Judge Wilkinson said

22   in *Johnson v Acosta* where that was one of the statements by the

23   plaintiff he said, "This would not be direct evidence on

24   pregnancy discrimination" and dismissed the case on summary

25   judgment.

1          THE COURT:  So I should have said maternity leave.

2          MR. HARVEY:  Right.  You should have --

3          THE COURT:  Okay, so changing my hypothet to

4    maternity leave --

5          MR. DOUGLAS:  Retaliation, that's -- just to

6    interrupt, I'm sorry, strictly FMA retaliation.  It's the only

7    single solitary claim she has pled.  She chose not to plead a

8    pregnancy discrimination --

9          THE COURT:  Okay.  Do you have any evidence, not a

10   story, evidence of FMLA retaliation other than the letter that

11   you referenced in Interrogatory 4?

12         MR. VENEZIA:  Everything else from the testimony.

13         THE COURT:  Okay, there's your answer.

14         MR. HARVEY:  So, Your Honor, the letter is the only

15   physical evidence that he is going to be able to introduce, is

16   that --

17         THE COURT:  That is what we've just heard.

18         MR. HARVEY:  Thank you, Your Honor.

19         Your Honor, may I ask, request that as they requested

20   I do that he amend his Answer Number 4 to say "Other than the

21   three witnesses listed, none"?

22         THE COURT:  That would be fine.

23         MR. HARVEY:  And also as to evidence -- as to

24   physical evidence the April 1st termination letter, none?

25         THE COURT:  So ordered.

14

1          MR. VENEZIA:  I'll do it.

2          MR. HARVEY:  Now, Your Honor, Interrogatory Number 5

3 the Defendant has -- I mean the Plaintiff, excuse me, what I'm

4 asking in Interrogatory Number 5, "In your Complaint as amended

5 you allege the Defendant alleged false reasons for terminating

6 her.  As to this allegation identify each and every such reason

7 you contend is false.  And as to each reason state what you

8 contend is false about the reason, describe all evidence and

9 witnesses which you contend support your allegation the reason

10 is false."

11          And, Judge, as you know under the *McDonnell Douglas*

12 three points we have come back and presented non-retaliatory,

13 valid reasons why we fired her.  Most important to that in

14 Documents 108-1 and 97-2 in this courthouse he has admitted

15 most of those reasons that we fired her and even said in her

16 admissions in 87-2 that any one of them was a reason that we

17 could have fired her for.  So now this becomes extremely

18 important based on what he has already admitted.  I need to

19 know what else is he going to come up with, because as far as I

20 can see there's nothing else.  But he needs to answer this,

21 this is not an answer.  He says he cannot respond, prove a

22 negative.  I don't think that's the standard, Judge, and I'm

23 very puzzled by this and I believe he needs to answer this.

24 But if he has no witnesses, fine.  If he has no evidence, fine.

25 He needs to say so.

1          THE COURT:  All right, Ms. O'Shesky, can you address

2    Number 5?

3          MS. O'SHESKY:  Your Honor, first of all I think that

4    Mr. Harvey is mischaracterizing some of the things in terms of

5    our response.  For example when he says that we admitted that

6    there was a legitimate reason -- or any of those alleged facts

7    were a reason to terminate her, what he said was we presented

8    testimony of this, not necessarily of the fact itself.

9          THE COURT:  I'm sorry, I didn't follow that.

10          MS. O'SHESKY:  In their Motion for Summary Judgment

11    which is pending the Defendants allege an uncontested fact that

12    they introduced evidence or testimony, their testimony that any

13    of those reasons would be a legitimate reason to terminate her.

14    Yes, they presented testimony, not necessarily the fact.  So we

15    admitted something different than what he's interpreting it as.

16          Additionally, even if we did admit that we're also

17    alleging that their reasons are pretexts, they're not actually

18    reasons for her termination.

19          MR. HARVEY:  Judge, first of all if you look at

20    Document 97-2 what had happened they replied, they filed an

21    Opposition to our Motion for Summary Judgment which is pending.

22    As to our undisputed issues of fact they have not filed a reply

23    and addressed each one of them.  The Judge gave them three

24    days.  And when they filed it if you look at Document 97-2 you

25    will see that they listed those things.  She admitted she threw

1    away the time card.  She admitted she had no personal records.

2    They went down the line and admitted and denied, and admitted

3    and denied, and gave the support for that particular.  As I

4    remember it, Judge, she said any one of these is sufficient to

5    have someone discharged.  Now I'm not sure what her motivation

6    is or her thought process is, but that's how you read it.

7    She's agreeing that any one of the ones she's admitted are

8    sufficient to terminate her.

9            Then if you go to Record Document 808.1 she clearly

10   goes through and she says "Statement of undisputed material

11   facts in support of their Motion now to Dismiss Prescribed

12   Counterclaims," and she has practically admitted -- she admits

13   most of the facts.  Sometimes -- now let me read a couple of

14   them.  "Sometime within the two weeks prior to May 28th Locke

15   told Williams that the coffeehouses were having financial

16   difficulties."  Number 10, "Upon learning of the difficulties

17   Williams engaged the assistance of Dionne Fernandez to hold

18   meetings and review financial records."

19           THE COURT:  Well, between Plaintiff's deposition,

20   which I assume you've taken, admissions on statements of fact,

21   et cetera, et cetera, do you not have what you need?  What more

22   do you want the Plaintiffs to do in response to Interrogatory

23   Number 5?

24           MR. HARVEY:  Very simple, Your Honor, if there's

25   something else besides those I need to know about them.  She

1    just simply says "The Plaintiff denies all of the allegations

2    made by Defendants because they are untrue."  Judge, if it was

3    that easy trials wouldn't go on very long.  "Every person

4    listed in Ms. Locke's disclosures will provide testimony

5    contradicting the Defendants' allegations."  Now, Judge, I

6    think he needs to go into those disclosures and pull it out and

7    show me because he's already admitted much of it.  So if

8    there's more I think I'm entitled to the answer to Number 5

9    because that's what the *McDonnell Douglas* parameters tell me to

10   do.  I need to know if you claim that my reasons for firing you

11   are a pretext tell me what they are.

12         THE COURT:  Where have you set forth your reasons for

13   firing?  Wouldn't this make for a really good Request for

14   Admissions for example where you say, "You, Ms. Locke, stole

15   video poker proceeds," and she has to admit or deny and explain

16   why that is not true?

17         MR. HARVEY:  I think, Your Honor, with all due

18   respect I think Interrogatory Number 5 pretty much does that.

19   You either tell me you have a witness and what he's going to

20   say and show me the evidence or you don't, and do like they

21   required me to do.  If you don't have it, say none.  If you

22   have it, tell me who it is and what he's going to say.

23         I think that's specific, Judge.  That's not like

24   Number 1.  This gets down to the nitty-gritty.  And those are

25   the -- you know, Judge, I didn't send a zillion

1    interrogatories.  I sent those things that focused on the

2    issues that I need to address in defending her claim which is

3    the sole issue, the FMLA retaliation claim.

4            MR. DOUGLAS:  Your Honor, I can answer your question

5    directly.  Donald Douglas.

6            We filed a Motion for Summary Judgment pending, went

7    through the with *McDonnell* Douglas in the process, and we laid

8    out a literal list in our Memorandum in Support with supporting

9    evidence of eight, or nine, or ten reasons, legitimate, non-

10   retaliatory reasons to terminate the Plaintiff.  They're stated

11   right there.

12           We recently filed within the last couple of days a

13   Supplemental Memorandum which basically expanded on that list

14   in light of a whole series of admissions the Plaintiff made.

15   But to directly answer your question, I think it's Page 9 or 10

16   of our Memorandum in Support of our Motion for Summary Judgment

17   thereabouts, there's the list.  And our concern is nobody has

18   ever told us, and these have been out there for a long time,

19   why they're false and more importantly what the evidence is.

20           MR. HARVEY:  We're seven weeks, going on six weeks

21   from trial, Your Honor, and we have to get ready just like the

22   Plaintiff does, and those are things I believe Rule 26(e) says

23   we should have by now.

24           MS. O'SHESKY:  Your Honor, --

25           THE COURT:  Hang on one second.

1          I'm looking at your Motion to Compel.  I don't even

2    see where you raised Number 5 in here guys.

3          MS. O'SHESKY:  Your Honor, they did not.

4          THE COURT:  We went from one where I was thinking,

5    "How did I miss this," and I didn't.  The witnesses and then

6    you jump into Number 15 with regard to bank records.

7          MR. HARVEY:  Judge, if you will look at my Exhibit

8    Number 5 I didn't think I had to address it in detail.  My

9    Exhibit Number 5, "Bob, I apologize for not responding

10   regarding Ms. Locke's answers to Interrogatories 1, 2, 4, and

11   5," and I assumed that he was going to amend that --

12         MR. VENEZIA:  We did amend it.

13         MR. HARVEY:  -- and I tied it in with --

14         MR. VENEZIA:  Your Honor, if you look at our response

15   we addressed Number 5 because it was in his email and we did

16   amend it prior to him filing the motion.  The language that

17   he's quoting and what he's arguing is prior to our amendment.

18   We amended it specifically referencing the expanded disclosures

19   which outlined who's saying what about the false accusations

20   they made against Ms. Locke regarding the reasons for firing

21   her.

22         THE COURT:  Where does your amended answer appear, in

23   your Opposition?

24         MR. VENEZIA:  It does, Page 6.

25         THE COURT:  What is enhanced about this?

1          MS. O'SHESKY:  One of the things that we amended was

2   the fact that we referenced our Statement of Contested Facts

3   that we filed in opposition to their Motion for Summary

4   Judgment.  There was a misunderstanding that is now clarified

5   where we refute everything.

6          MR. VENEZIA:  The Statement of Contested Facts

7   refutes every allegation that they made in their pleadings

8   against Ms. Locke.

9          THE COURT:  Item by item?

10          MR. VENEZIA:  Item by item.

11          MR. HARVEY:  Judge, I'm looking at Document 108-1.

12   I'd be happy to show it to you.  These Statement of Undisputed

13   Material Facts in Support of the Motion for --

14          MR. VENEZIA:  That's not the document we reference,

15   Your Honor.  We reference a different document.

16          MR. HARVEY:  You're talking about 87-2.

17          MR. VENEZIA:  Look at our Doc. 74, it's cited in the

18   answer, that's the one we're citing.

19          MS. O'SHESKY:  Well, 74 is the Motion for Summary

20   Judgment.

21          MR. VENEZIA:  Yeah, right.

22          MS. O'SHESKY:  We didn't have the docket number --

23          MR. VENEZIA:  But it's not 81, it's not the one he's

24   talking about.

25          THE COURT:  All right, I'm going to solve this a

1    different way.  We have a discovery deadline that passed.  Can

2    we do this?  With regard to anything that you've stated was a

3    reason for the termination that they have not already provided

4    you an explanation as to why they deem it false, and so

5    therefore you still have a fact question about that, can we

6    agree that they'll send you those statements, because it sounds

7    like there's not going to be much left once you match up the

8    Statement of Uncontested Material Facts, any statements made in

9    the Summary Judgment or the Opposition to it?  You see what's

10   left and if they've never addressed for example the taking of

11   video poker proceeds, then you have to explain now within say a

12   week of receipt of the question from Mr. Harvey why that is

13   false, or if it's not false stipulate.

14          MR. HARVEY:  That's fine, Your Honor, because where

15   we stand now is in this motion they're saying these are -- we

16   deny these, they're disputed.  Over here they're taking the

17   same facts and say they're not disputed for their motion.  I've

18   never seen that before, so I agree that's going to help,

19   Your Honor.

20          THE COURT:  All right, well then let's get a working

21   list of what remains either in dispute or never addressed.

22          MR. HARVEY:  Thank you, Your Honor.

23          THE COURT:  Okay.

24          MR. HARVEY:  Your Honor, now for bank records.

25          THE COURT:  Yes.

1          MR. HARVEY:  Your Honor, I sent an interrogatory

2     asking them for all the bank accounts and in Request for

3     Production Number 9 of producing her bank accounts.  And I

4     listed a couple of things in my motion about the purchase of

5     the homes which he says "Defendants claim as a fact without any

6     supporting evidence."  Both Mr. Varnado and Ms. Varnado

7     testified to the value of their homes which was between

8     $800,000 and $900,000 --

9          MS. O'SHESKY:  I'm sorry to interrupt you, Bob, it

10    wasn't Ms. Varnado.

11         MR. HARVEY:  I mean Ms. Locke.  They're brother and

12    sister so I have trouble with that.

13         But anyway, Your Honor, let me just say the

14    Plaintiffs say that we have pled that she stole cash,

15    Your Honor, and they readily admit that.  And our expert, we

16    had an expert come in, and we wanted him to resolve what cash

17    didn't go in the bank.  And he rendered a report, they've

18    deposed him already, and he came up with a figure that said

19    this is an amount of cash that did not hit the bank.

20         The Plaintiff admits she didn't keep any records or

21    get any receipts from people that she gave cash to, employees

22    that she paid cash to.  She didn't get any -- but the most

23    compelling reason that I should get the bank records is

24    everything that she said in Record 108-1, she admits all this.

25    She admits that "By May 28th Williams became concerned that

1   Locke was stealing money by failing to deposit cash." By late

2   2014 Williams was still suspicious and he repeatedly asked her

3   for -- requests Locke failed to produce the cash receipts and

4   he became very suspicious. He then goes on to say in Number

5   17, "Locke reported the findings of his investigation to

6   Williams during the meeting on February 28th and they decided

7   to terminate Locke." That's a fact they're admitting. Well,

8   Locke has said he reported the findings and problems with

9   missing cash, illicit payroll payments to family members, and

10  missing records.

11        Now, even more important than that, Your Honor, I

12  produced to the Plaintiff all of the video poker deposits into

13  the bank, the store's bank accounts. I have given them all of

14  our bank records. I have -- whatever they've asked me for I've

15  given them. I've got over 7,000 documents in this case now.

16  In these records beginning at Bates Number 1502 and through

17  1862 there are checks, deposits and checks of video poker money

18  the amount of $1,680,000 which Ms. Locke wrote every single

19  check to cash, signed the back of it, and took the cash and

20  there's not a single record of where it went.

21        Now, for those reasons, Judge, his argument is a good

22  thief wouldn't put the money in their bank account because you

23  wouldn't want them to see it. Well, maybe she's a bad thief.

24  I'd at least like to look, Your Honor.

25        THE COURT: Ms. O'Shesky, are you all really

1    contesting whether these documents are relevant or just trying

2    to put some limits on the scope?

3            MS. O'SHESKY:  I don't think that they're relevant,

4    Your Honor.  And in terms of the admissions that Mr. Harvey is

5    talking about in our Statement of Uncontested Facts, he's

6    taking that out of context.  It's in the pleading on the

7    judgment for --

8            MR. VENEZIA:  Your Honor, if I may, it's in a motion

9    that we filed to say that their counterclaims are prescribed.

10   Those statements are prefaced that Mr. LaRocca testified A, B,

11   C, D.  So those -- we are repeating accusations and statements

12   that they made.  We're not adopting them.  Matter of fact

13   there's a footnote in the memo that says "We denied all

14   wrongdoing and deny all other" -- so they're not admissions.

15   But that's not really what's before you.  What's before you is

16   are these records relevant?  And we did not do anything to put

17   Ms. Locke's financial condition at issue.

18           They put their financial condition at issue because

19   they on their own used a forensic analysis of their bank

20   accounts first initially by their in-house accountant or the

21   accountant that they regularly use, and then later by a

22   forensic accountant who used those bank statements.  So they

23   created the relevance of their own bank statements and they

24   produced them to us because they used them in this case to make

25   accusations against my client.

1              Now, I never did that.  My client's financial records

2    just like yours, or mine, or her financial records are

3    confidential.  They're not shared with the whole world.

4              THE COURT:  Well, look, I'm going to cut to the chase

5    here, I think they're relevant.  I think maybe we put some

6    boundaries on them, but they're relevant.  And they can be

7    protected through a protective order.

8              Mr. Harvey, I assume you wouldn't have any objection

9    to putting a protective order on the bank records.  And then to

10   the extent you need to use them at trial you can figure out how

11   to get around that.  But, obviously, they won't be made public.

12   They won't be filed into the court record.

13             MR. HARVEY:  I have no problem with that, Your Honor.

14             THE COURT:  Okay, how many years?  There was no time

15   frame on the Interrogatory or the Request for Production

16   Number 9.

17             MR. HARVEY:  Let me see, Your Honor.

18             THE COURT:  How many years do you want?

19             MR. HARVEY:  Let's see what I said.  Well, it did, it

20   said -- I wanted every institution since January 2003, but and

21   I say 2003 through 2016.  However, Your Honor, I'd be happy

22   with 2009 through 2014.

23             THE COURT:  Okay, if that makes you happy then let's

24   go with 2009 through '14.

25             Ms. O'Shesky, do you know how many bank accounts are

1  implicated by this request?  Did these folks carry lots of bank

2  accounts?

3            MS. O'SHESKY:  I am not certain, Your Honor.  I know

4  -- if I recall correctly she had one with her husband and one

5  on her own, or maybe it was one checking one savings on her

6  own, one checking one savings with her husband.  I would have

7  to talk to her again.

8            THE COURT:  Okay.  Well, with regard to any bank

9  accounts over which Ms. Locke had control, was able to make

10 deposits and withdrawals, was an owner or a co-owner for 2009

11 to 2014 those documents needs to be produced.  But how many are

12 in her possession, do we know that?

13           MS. O'SHESKY:  I know that she has three children.

14 She may have one savings account started for them.  I'm not

15 certain.  I'm not sure, Your Honor.

16           MR. VENEZIA:  Judge, we're unaware if she's got like

17 online access and if she does have far that goes back.  I don't

18 know if she maintains paper copies.  I means she's not --

19           MR. HARVEY:  Judge --

20           MR. VENEZIA:  -- she wouldn't have a reason to

21 maintain paper copies going back that very, very far back.  I

22 don't know how far back she's going to have.

23           THE COURT:  Okay.

24           MR. HARVEY:  Judge, may I ask first that he answer

25 Interrogatory 15 and list the accounts?

27

 1          MR. VENEZIA:  Yeah, we can do that.

 2          MR. HARVEY:  That's the first thing I'd like him to

 3   do.  The second thing, Your Honor, --

 4          MR. VENEZIA:  During that time period the '09 to '14

 5   time period?

 6          THE COURT:  Right, we're going to limit it to '09 to

 7   '14 then.

 8          MR. HARVEY:  And, Judge, I know that we've done it

 9   for them.  We can walk into our bank and say "We want this,"

10   and within 15-20 minutes they'll have it.  It's so computerized

11   today, because we don't deal with the actual checks, we deal --

12   as Your Honor can see we deal with these little printed copies.

13   So, I would think, Your Honor, that she could easily respond to

14   that by going right to the bank and say, "I need my copies."

15          MR. VENEZIA:  We'll do that as long as they agree to

16   pay the cost.

17          MR. HARVEY:  If there's a cost I'll pay for it.

18          THE COURT:  Okay, fair enough.  So, the Plaintiff

19   will request -- first the Plaintiff is going to identify all

20   bank accounts as I described a minute ago.  This would include

21   things with the husband, where she's the custodian of her kids'

22   savings account, checking account, whatever it is.  You'll list

23   all of those.  Then you are going to get your client's

24   cooperation to go to the bank and get all responsive records

25   for 2009 to 2014.  If there's any cost associated with that

1    Defendant will pay for that.

2              There was some issue of redactions for withdrawals

3    that came up I believe in one of the motions or maybe that was

4    my thought.

5              THE CLERK:  Yeah.

6              THE COURT:  Okay.  Then let's just leave it as total

7    production.  If there's something on there you think is more

8    privileged than a protective order would cover, get with

9    Mr. Harvey and see if there's something you want to redact, but

10   okay --

11             MR. HARVEY:  Final, Your Honor, --

12             THE COURT:  Facebook.

13             MR. DOUGLAS:  Wait, it's got to show deposits.

14             MR. VENEZIA:  Yeah, yeah, she's talking about

15   withdrawals.

16             MR. HARVEY:  We're looking for the deposits,

17   Your Honor.

18             MR. DOUGLAS:  Make sure it shows deposits.

19             MR. HARVEY:  Deposits.

20             THE COURT:  Right.

21             MR. VENEZIA:  She's going to redact the withdrawals.

22             MS. O'SHESKY:  Right.

23             MR. HARVEY:  I don't think you said redact

24   withdrawals?

25             THE COURT:  I asked if that was one of the requests

1    being made, but that was a possible solution that I had come up

2    with along the way, so it was in my bench memo and it sounds

3    like just producing the statements is going to be easier.

4            MR. HARVEY:  Yeah, I think so.  I'd like to see the

5    money going out.  I've got her tax returns.  This is going to

6    be very simple, it's not going to be complicated, but I think

7    we're entitled to it and I appreciate your ruling.

8            THE COURT:  Okay.

9            MR. HARVEY:  Now --

10           THE COURT:  Facebook postings.

11           MR. HARVEY:  Facebook postings.  Your Honor, I think

12   we can make this simple.  Initially he objected to this and I

13   sent the Interrogatory and the Plaintiffs objected to it.

14   However, several times during the depositions I inquired about

15   it and they said they were waiting for Facebook to download.

16   They had followed my instructions to get the download from

17   Facebook.  Facebook tells us it takes 20 or 30 minutes.  But

18   after about three or four weeks they said they had it.  At the

19   last deposition Ms. O'Shesky said "We got the download.  We're

20   going to go through them."

21           Now, I kind of objected to that, but I think the law

22   says she could do that, he can do that.  However, at this

23   stage, Your Honor, I haven't got one posting.  And even though

24   now he has agreed to produce it and I would only want those

25   things during the time of her employment and I guess through

1    today because of this lawsuit she may be posting things

2    associated with this lawsuit.  That's what I would want and I'd

3    ask Your Honor to look at it in camera.

4           MS. O'SHESKY:  Your Honor, we did not agree to

5    produce anything.  We said that the one post that she says that

6    she made they already have possession of.  We actually say that

7    she shouldn't have to produce anything, but if she does that it

8    should be limited to certain particularized items.

9           MR. HARVEY:  Your Honor, she denied knowing about the

10   post.

11          MR. VENEZIA:  That's not what she said.

12          MS. O'SHESKY:  In her answer --

13          MR. VENEZIA:  She was later in 2016 not when you said

14   it was.

15          MS. O'SHESKY:  Exactly.

16          THE COURT:  I was confused as to what the "incident"

17   is.  The Interrogatory asks whether the Plaintiff has posted to

18   any social media any content regarding the incident, any of the

19   Defendants, any damages or injuries you complain of, any issues

20   in the captioned lawsuit and/or the captioned lawsuit.  Most of

21   that I think is easy to identify and you would know it on her

22   Facebook post if you saw it if she's mentioning any of the

23   Defendants, if she's talking about the lawsuit.  But what is

24   the "incident"?

25          MR. HARVEY:  The discrimination incident.

1           MR. DOUGLAS:  The termination.

2           MR. HARVEY:  The termination.

3           THE COURT:  The termination?

4           MR. HARVEY:  Yes.

5           MS. O'SHESKY:  That's --

6           MR. HARVEY:  I mean I think that's extremely

7    important, Your Honor.

8           THE COURT:  I think that is discoverable,

9    Ms. O'Shesky.  I don't think you know how she spent her last

10   vacation is, or her friends writing to her, or anything else.

11   But if you could go back -- so that's going to start with --

12   that's going to be a pretty certain date presumably maybe a

13   month before the termination and then --

14          MR. HARVEY:  I think starting in 2015 through today.

15          MR. VENEZIA:  Okay.  Your Honor, can I -- there's a

16   little technical thing I'd like to address.  What was produced

17   to us from Facebook are these folders and they're not a PDF

18   like we've been producing back and forth in this case.  And I

19   can do searches for these things, I mean because that's -- it's

20   just a huge list of stuff that's not even in chronological

21   order.  It's just kind of there.  I can do searches from these

22   things, but there are things in there that are private and has

23   nothing to do with this case.  Can I just take the things that

24   I believe are relevant which will have the time stamps of when

25   they occurred and of who posted them and that kind of stuff and

1    make a PDF and use that to produce to him?

2            THE COURT:  That sounds adequate to me.  Are you okay

3    with that, Mr. Harvey?

4            MR. HARVEY:  At this point I think so, Your Honor.

5            THE COURT:  Okay.

6            MR. HARVEY:  If I have a problem with it I'll let you

7    know.

8            THE COURT:  Can you do word searches and that sort of

9    thing to --

10            MR. VENEZIA:  Correct, you can do --

11            THE COURT:  -- figure out what's in there so you

12    know --

13            MR. VENEZIA:  That would be the way to do it, because

14    it's not --

15            THE COURT:  Right.

16            MR. VENEZIA:  -- for whatever reason it's not in

17    chronological order.

18            THE COURT:  Okay.  And if there are any words --

19            MR. VENEZIA:  It's semi-chronological, it's subject

20    matter and chronological.

21            THE COURT:  -- you want him to search, Mr. Harvey,

22    please send them to him promptly.

23            MR. HARVEY:  I will.

24            THE COURT:  But the obvious words should be obvious.

25            MR. VENEZIA:  Right.

1          THE COURT:  Okay.

2          MR. VENEZIA:  Firing, termination, that will be stuff

3  that's easy to search for.

4          THE COURT:  Right.

5          MR. VENEZIA:  She probably didn't use the word

6  terminate --

7          THE COURT:  Leave, FMLA, you know what --

8          MR. VENEZIA:  Lawsuit.

9          THE COURT:  Okay, yes.

10          MR. HARVEY:  Your Honor, as to the discovery

11  responses time and as to the production time?

12          THE COURT:  Well, y'all are on a short fuse now --

13          MR. VENEZIA:  The Facebook thing is going to take me

14  a minute.

15          THE COURT:  The what?

16          MR. VENEZIA:  The Facebook stuff is going to take a

17  minute to do that.

18          THE COURT:  Why don't you prioritize, Mr. Harvey, out

19  of everything that you just got granted -- well, Numbers 1 and

20  4 that should take you about five minutes to say these three

21  witnesses and one document and nothing else.  So why don't we

22  have that within a week?

23          MR. HARVEY:  That's fine, Your Honor.

24          THE COURT:  Number 15 which are the bank records can

25  we make that happen by next Friday, September 22?

1          MR. VENEZIA:   We will do -- we will make sure she

2   goes to the bank before the end of this week and assuming the

3   bank can get them to us quickly then -- we will let you know if

4   there's a problem, but I imagine the bank can do it pretty fast

5   because it's computerized now.

6          THE COURT:   Okay, great.   So with the trial date of

7   November 6th that should still work out.   Okay, so they will be

8   produced to Mr. Harvey by Friday, September 22.   And then the

9   other thing is the Facebook postings.   Can we also go with

10  Friday, September 22 on that?

11         MR. VENEZIA:   I think I can make that happen, Judge.

12         MR. HARVEY:   That's fine with me.

13         THE COURT:   It's okay?

14         MR. HARVEY:   Yes.

15         THE COURT:   All right.

16         MR. HARVEY:   And as to Interrogatory Number 5,

17  Your Honor, we'll do -- I'll wait for your order to come out so

18  we're absolutely sure of what you've asked us to do.   We'll

19  start preparing it, Mr. Douglas made notes.   And then

20  reasonable response?

21         THE COURT:   I don't think my order is going to be any

22  clearer, my written order than what I just made it and I'm

23  really putting the onus on you to figure out --

24         MR. HARVEY:   All right.

25         THE COURT:   -- what it is you think is still lurking

35

```
 1   out there --
 2           MR. HARVEY:  All right, Your Honor.
 3           THE COURT:  -- where you don't know the Plaintiff's
 4   position on some statement you or your company have made.
 5           MR. HARVEY:  All right.
 6           THE COURT:  It is incumbent upon you to send those to
 7   the Plaintiff's counsel.  They then have seven days to respond.
 8           MR. HARVEY:  That's fine, Your Honor.
 9           THE COURT:  So how fast that happens is up to you.
10           MR. HARVEY:  Is up to me.  Thank you very much,
11   Your Honor.
12           THE COURT:  Okay.
13           MR. VENEZIA:  Well, Judge, can you give him a
14   deadline like they can't do this like the week before trial?
15           MR. HARVEY:  Oh, no.
16           THE COURT:  Okay.
17           MR. HARVEY:  You'll get this very quickly.
18           THE COURT:  No later than Friday, September 22.
19           MR. HARVEY:  That's fine, Your Honor.
20           THE COURT:  And if you don't have a list from
21   Mr. Harvey by then it means one's not coming.
22           MR. VENEZIA:  Got you, all right.
23           THE COURT:  Okay?
24           MR. VENEZIA:  Fair enough.
25           THE COURT:  Is there anything else?
```

1          MR. HARVEY:  No, Your Honor.

2          THE COURT:  Okay.

3          MR. HARVEY:  Thank you very much for your time today.

4          THE COURT:  All right.

5          MS. O'SHESKY:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7                          *    *    *    *    *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**S/Ann B. Schleismann**                  **9/22/17**
 **ANN B. SCHLEISMANN**                    **DATE**